DIXIE BEDDING MANUFACTURING
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 17484.

United States Court of Appeals
Fifth Circuit.

June 30, 1959.

Abraham H. Shukat, Miami Beach, Fla., for petitioner.

Fred S. Landess, Atty., N. L. R. B., Thomas J. McDermott, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B.,

Washington, D. C., Jerome D. Fenton, General Counsel, Arnold Ordman, Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Before JONES, BROWN and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The petitioner, Dixie Bedding Manufacturing Company, seeks review of a decision and order of the National Labor Relations Board which held that the petitioner had committed unfair labor practices in violation of Sections 158(a) (1) and 158(a) (2) of Title 29 U.S. C.A.,[1] by recognizing Amalgamated Local 498, International Doll and Toy Workers of the United States and Canada, AFL-CIO (herein Local 498), as the exclusive bargaining representative of its employees and entering into a contract with it at a time when the union did not represent a majority of petitioner's employees, and by granting financial and other assistance to Local 498. The Board's order requires the petitioner to cease and desist from recognizing Local 498, as the bargaining representative of its employees, and from renewing, entering into, or giving effect to any contract with Local 498 unless and until the union shall have demonstrated its majority status pursuant to a Board-conducted election among the petitioner's employees. The order affirmatively required the petitioner to withdraw and withhold all recognition from Local 498 as the collective bargaining representative of its employees, to post and maintain a prescribed notice for 60 days, and to reimburse its employees for any dues, assessments, or initiation fees deducted from their earnings and paid to Local 498.

The petitioner is a corporation doing business at Miami, Florida, where it is engaged in the manufacture of bedding and bedding products for sale and shipment in interstate commerce. In June, 1956, the Upholsterers' International Union of North America, Local 300, AFL-CIO (herein Local 300), started a campaign to organize the petitioner's employees. These efforts came to the attention of the employees and management of the petitioner, but met with little success. Local 300 made no claim for recognition. There is a question as to the extent Local 498 engaged in a similar campaign.

Arthur Gobbo, business agent for Local 298 of the Doll and Toy Workers, which had its headquarters in Union City, New Jersey, and chief organizer of Local 498, testified that on a visit to Miami in May, 1956, he learned that the petitioner's employees were unorganized. He stated that he immediately launched a vigorous organization campaign. It was his testimony that from May until November he employed two to five individuals to help him organize the plant and that he actively solicited members for his union on many occasions when he came from Union City to Miami. On October 7, 1956, Gobbo obtained a charter from the international headquarters of the Doll and Toy Workers establishing Local 498 and conferring jurisdiction over the State of Florida upon it. Gobbo further testified that by the first of November he had enlisted the support of a majority of petitioner's employees.

On or about November 6th Gobbo met with the petitioner's president, Harold Beck. He asserted that Local 498 represented a majority of the employees and asked for recognition of the union. Upon Beck's insistence that he prove

---

1. "§ 158 (a) It shall be an unfair labor practice for an employer—
  "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * * *".

he had a majority, Gobbo "waived" a bundle of slips at Beck and said "Here they are." However, he refused to allow Beck to examine the slips and threatened a strike or slowdown in production as a means of demonstrating a majority. At this point Beck terminated the meeting.

Beck testified that although at that time he did not believe Gobbo had a majority, he was concerned over the claim because in a similar situation a few years earlier the petitioner had suffered severe economic losses after withholding recognition from a union which turned out to have a majority. Beck further testified that he instructed his superintendent, Richard De Maria, to check around the plant and see if "these guys" had a majority. De Maria reported that from what he heard it seemed that the "union", without identifying which union, had pretty close to a majority.

At their second meeting, held a few days after the first, Beck and Gobbo discussed the recognition issue briefly and without making any progress. Beck then decided to hold this question in abeyance pending a discussion of Gobbo's demands. In reply to this question asked him at the hearing, "If you did not like his terms, you would demand proof of majority by some system or other?", Beck stated, "If the terms appeared to be stronger than what we felt we could stand, we would have to take a different course." Beck apparently felt that Gobbo's demands were reasonable for he never again questioned the majority status of Local 498. The second meeting lasted two or three hours and ended on an amicable note. At a third meeting the basic terms of a contract were orally agreed upon. The parties met again on November 17th with the petitioner's attorney who began preparing a draft of the contract. The contract was executed on December 17th.

The contract was to run for five years with no provision for re-opening. It provided for a modest wage increase and also contained a dues check-off provision

as well as other clauses typical in labor contracts. It contained a union security provision which required the petitioner's employees to join the union within 30 days as a condition of continued employment. This latter provision was qualified by a subsequent clause which stated that the petitioner could retain an employee in its employ despite the employee's non-membership in the union upon the "insistence of the employee upon his or her rights under the provision of the Florida Constitution known as the 'Right to Work Amendment [F.S.A. Const. Declaration of Rights § 12]' and Statutes of the State of Florida of a like nature."

During the period following the last meeting on November 17th and the execution of the contract on December 17th, Gobbo indicated that he wanted the raises to go into effect by December 1st. Following further negotiations the petitioner agreed that in lieu of the raises retroactive to December 1st, it would pay a $5 initiation fee and $4 dues for December for all members of Local 498. On December 23rd Gobbo submitted authorization slips from 150 employees to the petitioner. After they were checked and returned, Local 498 received a check for $1,350 from the petitioner.

On December 20th, three days after the execution of the contract but prior to the date Gobbo turned over the authorization slips to the petitioner for counting, Gobbo visited the plant for the ostensible purpose of exercising his newly acquired contract right to check on working conditions. He told Beck that he wanted to "service" the plant. Beck called in Superintendent De Maria and instructed him to take Gobbo around the plant and to make it clear to the employees that they were free to join the union or not, as they pleased. De Maria interpreted these remarks as a permit to Gobbo to sign up those employees who wanted to join Local 498. Accordingly, De Maria took Gobbo to each department in the petitioner's plant and told each supervisor in charge that Gobbo could solicit the employees, but

that they were free to join or not to join, as they pleased. Gobbo testified that on this day he secured "around 25" authorization slips.

In January, 1957, Local 300 of the Upholsterers' Union filed unfair labor practice charges against the petitioner which subsequently resulted in the issuance of a complaint alleging violations of 29 U.S.C.A. §§ 158(a) (1) and 158(a) (2). Following a hearing the Trial Examiner issued an Intermediate Report. In it he concluded that General Counsel for the Board had not sustained the burden of proving that Local 498 did not represent a majority when recognized by the petitioner and therefore recommended dismissal of the complaint in its entirety. He did not make specific findings on the charges of contributing financial and other support to the union.

The Board disagreed with the Trial Examiner and held that General Counsel had established by a preponderance of the evidence that the petitioner had violated sections 8(a) (1) and 8(a) (2) of the Act. It therefore issued the order which the petitioner now asks us to review and which the Board asks us to enforce.

■ Petitioner first attacks the Board's finding that it violated Sections 8(a) (1) and 8(a) (2) by granting recognition to and entering into a collective bargaining contract with Local 498 at a time when the union did not represent a majority of the employees. No question is raised as to legal principles involved, it being well settled that the grant of exclusive recognition to a union which lacks majority representation is unlawful. Petitioner's argument consists entirely of an attack on the factual determination of the Board.

■ The nature of our function in passing on this contention is clear. It has long been established that in reviewing the Board's findings we are not to weigh the evidence, resolve its conflicting inferences, or even draw our own inferences therefrom. Regardless whether our decision would have been the same had it been our task to review the evidence de novo, if the Board's conclusions are supported by substantial evidence they will not be disturbed. 29 U.S.C.A. § 160(f); N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406; N. L. R. B. v. Nabors, 5 Cir., 1952, 196 F.2d 272, certiorari denied 344 U.S. 865, 73 S.Ct. 106, 97 L.Ed. 671; N. L. R. B. v. Russell Mfg. Co., 5 Cir., 1951, 191 F.2d 358; 31 Am.Jur. 663, Labor, § 338.

■ In reaching its conclusion the Board pointed out that Beck's own testimony showed that he did not believe Local 498 represented a majority and that he entered into negotiations with it "partly because he feared the economic reprisals threatened by Gobbo and partly because Gobbo was willing to accept a long term contract providing for only small wage increases and which was otherwise favorable" to the petitioner. The Board also noted that, apart from Gobbo's testimony, there was no evidence of any organizational activities of Local 298 or Local 498 prior to the recognition of the union. Not only did Gobbo refuse to identify the individuals who he claimed to have employed in the organization campaign, but no witness testified that he had seen Gobbo or his associates or that he had heard of their union prior to its recognition by the petitioner. No circulars for Locals 298 or 498 were submitted in evidence and no organizational meetings were held prior to January, 1957.

The Board also relied on the "mathematical admission" resulting from Beck's testimony that during November, 1956, the crucial period herein, the petitioner had about 165 to 180 employees, in connection with Gobbo's admission that when recognized he had only about 75 or 80 authorization slips. Further evidence from which the Board drew inferences in support of its conclusion was that Gobbo, when asked by Beck to prove his majority representation, threatened a strike in the first instance. There was also the testimony of one of the petitioner's foremen who acted as an interpreter for Gobbo and some of the pe-

titioner's Spanish-speaking employees. He testified that Gobbo instructed him to tell these employees to sign their names only, although the authorization cards had a space for inserting the date.

Judging this evidence under the standard which we must apply, it clearly affords a substantial basis for the Board's conclusions. This assignment of error must therefore fail.

■■ The petitioner's next contention is that the Board erred in ruling that it violated Sections 8(a) (1) and 8(a) (2) of the Act by contributing financial and other support to Local 498. In regard to the $1,350 payment made by the petitioner as initiation fees and dues, petitioner argues that this payment was not voluntarily made, but rather was made in lieu of the retroactive wage increase demanded by Gobbo. It is also urged that this payment would not constitute unlawful assistance unless it helped Local 498 obtain a majority, and, the union having a majority at the time this payment was agreed to, there was no violation of the Act.

We think these and petitioner's other contentions are without merit. It cannot be questioned that this payment to Local 498 constituted financial support within the meaning of Section 8(a) (2) of the Act, 31 Am.Jur. 569, Labor, § 233. The mere fact that the petitioner agreed to make this payment to the union as a compromise of a demand for a retroactive wage increase for all of the employees would not seem to make it any the less unlawful. We deem it of no significance whether Local 498 had signed up a majority of the petitioner's employees at the time this payment was agreed to. Since the union did not represent a majority at the time it was recognized, any majority which it may have subsequently obtained would be tainted by this unfair labor practice and thus could not be a defense to this charge. Cf. International Association of Machinists, Tool and Die Makers Lodge No. 35 v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50, rehearing denied 311 U.S. 729, 61 S.Ct. 314, 85

L.Ed. 474. The Board correctly concluded that the agreement to pay the initiation fees and dues for December was an inducement to the petitioner's employees to join the union. The evidence amply supports the Board's conclusion that the $1,350 payment was in violation of Sections 8(a) (1) and 8(a) (2) of the Act.

Petitioner next attacks the Board's findings that it violated these same provisions by having its supervisors take Gobbo through the various departments of the plant, introducing him to the employees and otherwise soliciting and encouraging the employees to join Local 498. It is argued that upon the execution of the contract the union had the right to have access to the plant, that there was no evidence of solicitation by the supervisors, and that these circumstances were at most trivial and did not amount to contributing support within the meaning of the Act.

■ Even if the contract had granted the union representatives a right to solicit members inside the plant, it is clear that the petitioner cannot rely on a provision of a contract which was unlawfully entered in the first place. The contract only provided that the representatives of Local 498 had the right to visit the plant in order to inspect the working conditions. As to whether the petitioner's assistance was too trivial to constitute interference with the employees' section seven rights and support of Local 498, what we have said in relation to our function in reviewing the Board's fact findings applies here as well. Whether or not the supervisors actually solicited members for Local 498, we think the Board could properly infer that petitioner's actions in granting access to the plant, accompanying, and otherwise assisting Gobbo as the solicited members might well have had considerable influence in overcoming any reluctance the employees had toward joining the union. There is substantial evidence to sustain the Board's conclusion that this conduct constituted interference and support. Cf. N. L. R. B. v.

Wemyss, 9 Cir., 1954, 212 F.2d 465; Elastic Shop Nut Corp. v. N. L. R. B., 8 Cir., 1944, 142 F.2d 371, certiorari denied 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580.

The last question presented concerns the propriety of that portion of the Board's order which requires the petitioner to reimburse its employees for all dues, assessments, and initiation fees deducted from their earnings and paid to Local 498 pursuant to the check-off provision of the contract. The petitioner argues that this remedy may be applied only where it is charged and established that the employees have been subjected to a contract which compels them to pay dues to the union as a condition of continued employment in violation of Section 8(a) (3) of the Act. Since there has been no charge of a violation of Section 8(a) (3) and since under the union security provision in this contract the employees were free to join or not to join as they pleased, the Board exceeded its authority in issuing the reimbursement order.

 We agree that there must be some showing of coercion of the employees in regard to their joining the union and executing the check-off authorization as a prerequisite to the Board's issuance of a reimbursement order. N. L. R. B. v. McGough Bakeries Corp., 5 Cir., 1946, 153 F.2d 420; N. L. R. B. v. Parker Bros. & Co., Inc., 5 Cir., 1954, 209 F.2d 278; N. L. R. B. v. Braswell Motor Freight Lines, 5 Cir., 1954, 213 F.2d 208, 209. We think, however, the existence of the union security provision requiring the petitioner's employees to become members of the union within 30 days was in and of itself sufficient coercion to justify the issuance of the reimbursement order. The subsequent clause allowing the petitioner to retain any employee who insisted on his rights under the "Right to Work Amendment" to the Florida Constitution did not postpone or defer the application of this requirement. The fact that an alert and informed employee could invoke this proviso and thus hold his job without joining the union does not detract from the coercive effect of the inclusion of this provision in the contract. Cf. Red Star Express Lines of Auburn v. N. L. R. B., 2 Cir., 1952, 196 F.2d 78; N. L. R. B. v. Gaynor News Co., 2 Cir., 1952, 197 F.2d 719; N. L. R. B. v. Broderick Wood Products Co., 10 Cir., 1958, 261 F.2d 548. The Board has a wide discretion in ordering affirmative action against persons found to have committed unfair labor practices. Virginia Electric and Power Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L. Ed. 1568, rehearing denied 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489. No abuse of that discretion has been shown here. We think under the circumstances of this case the Board was authorized to require reimbursement in order to effectuate the policies of the Act and to correct the illegal effects of the petitioner's unfair labor practices.

The petition for review is dismissed and the Board's order will be

Enforced.