**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**LOCAL 60, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO; Indianapolis and Central Indiana District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO; and United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Respondents.**

**No. 12710.**

United States Court of Appeals
Seventh Circuit.

Jan. 22, 1960.

Stuart Rothman, Gen. Counsel, William J. Avrutis, Thomas J. McDermott, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Duane B. Beeson, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

William A. McGowan, Francis X. Ward, Indianapolis, Ind., for respondents.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

The National Labor Relations Board seeks enforcement of its Order against the three respondents, hereinafter call-

ed respectively: "Local 60," "the Council,"[1] and "the International."

The Board found that Mechanical Handling Systems, Inc., hereinafter called "the Company", maintained two agreements with the respondents. One was a master contract to which the International was a party. The other was an oral agreement to which Local 60 and the Council were parties.

The Board found that both agreements operated to require union membership as a condition of employment in violation of Section 8(b) (2) and (1) (A) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(b) (1) (A), (2), and that enforcement of these agreements prevented the hiring of two specified employees.

The master contract provided:

"We, the firm of Mechanical Handling Systems, Inc., Agree to recognize the jurisdiction claims of the United Brotherhood of Carpenters and Joiners of America, to work the hours, pay the wages and abide by the rules and regulations established or agreed upon by the United Brotherhood of Carpenters and Joiners of America of the locality in which any work of our company is being done, and employ members of the United Brotherhood of Carpenters and Joiners."

The rules and regulations established or agreed upon by the United Brotherhood of Carpenters and Joiners of America applicable in Indianapolis, Indiana, thus incorporated by reference, appear in the constitution and trade rules of the Council. These provide (*inter alia*) that (1) union members may not work with members, or ex-members, who have been suspended or fined (until the fine has been paid) and may not work with non-members without permission of the Council; and (2) members must present working cards to the union steward on the job before going to work; members of foreign locals of this same Union coming in-

to the area must secure working cards before seeking employment.

The Council obtains a part of its revenue from fees collected for cards and permits. The Council has the sole right to issue quarterly working cards to the locals for their members (and such extra cards as may be required) for all of which the local union is accountable to the Council. The Council has authority to revoke cards. The Council's constitution provides for a clearance card committee to examine all clearance cards and make recommendations to the local union regarding acceptance of such cards. The trade rules provide for a foreman of carpenters on all jobs where three or more journeymen carpenters are employed. The foreman must be a member in good standing. He shares responsibility with the union steward for enforcement of the trade rules.

In his Intermediate Report, the Board's Trial Examiner had found the master contract to be illegal. No exceptions were filed to this finding by the respondents and the Board adopted that finding. However, the Board did not adopt the Trial Examiner's conclusion that no connection existed between the master contract and the oral contract (discussed below) to which the Company, the Council and Local 60 were parties.

On the basis of the above quoted provision of the master contract and the rules incorporated by reference, the Board found that the master contract provided such limitations on hiring as to establish the closed shop conditions outlawed by the Statute.

The Trial Examiner found further (and the Board adopted his finding) that an illegal oral agreement had been made. In January, 1957, the Company was installing conveyor equipment in the Ford Motor Company plant at Indianapolis. The superintendent in charge of the job agreed with the Council's President, the only person authorized to make contracts for the Council and for Local 60,

---

1. The Council is composed of delegates from various locals in the area, including Local 60, which are affiliated with the International.

that the Company would abide by the master contract; would hire all needed millwrights and carpenters through Local 60, employing only those who brought referral slips from the Local; and that wages and working conditions would be governed by the Council's current contract with the local Building Contractor's Association.

The Board concluded that this oral agreement was made to implement the master contract and was part of a single comprehensive plan to evade the statutory ban on closed shops. The *Marley Company*, 117 N.L.R.B. 107, 109, 110 (1957).

Hafford B. Carter and Elza Stevenson, who had worked for the Company in Louisville, Kentucky, were not members of Local 60, nor of the Council, but were members of other locals affiliated with the same International Union. They applied for employment with the Company at the Ford job and were sent to Local 60 for referral cards. Referral cards were denied them, although when the person in charge at the Council office telephoned the Company superintendent, the superintendent said that he would have work for these two men within two weeks. Later the Company superintendent told Carter that he wished both men to begin work the following day. The Company superintendent wrote the Council's President asking for work permits for these two men, but the permits were, nevertheless, refused. Neither man ever received a permit and neither was ever allowed to work on the Ford job.

Charges were filed with the Board on behalf of Carter against the International, the Council, and Local 60, and on behalf of Stevenson against the Council and Local 60. Thus no finding was made against the International as to discrimination with respect to Stevenson.

The Board's Order required all three respondents to cease and desist making or enforcing agreements which required union membership as a condition of employment; to reimburse all employees of the Company for dues, assessments, and permit fees illegally exacted under the illegal contracts with the Company; to make Carter whole for loss of earnings; and to make certain notifications and to post specified notices. Similar actions were required of the Council and Local 60 with respect to Stevenson.

■ Although none of the respondents did so, the General Counsel for the Board had filed exceptions to the Trial Examiner's Intermediate Report. Had no exceptions been filed, the Trial Examiner's Recommended Order would have become the Board's Order. The Trial Examiner, as indicated, had found no connection between the master contract and the oral contract. He had concluded that the International engaged in none of the unfair labor practices alleged in the complaints. Further he had recommended that Local 60 and the Council be required to make restitution only to Carter and Stevenson for loss of pay arising from the discriminatory refusal of employment.

The International filed a motion to dismiss the proceedings before the Board on the ground that the exceptions filed by the General Counsel on February 21, 1958, were not served on the International immediately as required by Section 102.46 of the Board's Rules and Regulations. The exceptions were due in Washington, D. C. on February 24, 1958. They were received by the Board in apt time.

The Board found that the General Counsel had mailed copies to all three respondents on February 21, 1958, by certified mail, an approved mode of service under Section 102.46 and 102.89 of the Board's Rules and Regulations. Section 102.90 provides that the date of service is the day when the material to be served is deposited in the United States Mail. No signed receipt slip for the certified mail was returned to the General Counsel from the International, but certified mail receipt slips from Local 60 and the Council show timely receipt of the copies by them. All three respondents were represented by the same counsel in these proceedings. Later personal service was made on counsel for the International,

which was accordingly given additional time to answer the exceptions so that it was in no way prejudiced. As the Board found neither prejudice to respondents nor lack of due process in the service of copies of exceptions, motion to dismiss was denied and the Board concluded that valid service had been made. We agree.

 Respondents argue that the evidence fails to show any dues, assessments and fees exacted under the agreements found to be unlawful; that on the contrary, all such fees were paid voluntarily. However, in our opinion, the record does support the Board's finding that such fees were coerced in that there was present an implicit threat of loss of job if those fees were not paid. The rules of the Council and Local 60 provided for supervision on the job to prevent any but local union members in good standing from working. The three respondents had full control of employment of millwrights and carpenters on the Ford job, even to veto over the Company superintendent's wishes to hire two former employees, both members of other locals affiliated with the same International. The fact that a contrary inference was possible does not empower this Court to set aside the inference drawn by the Board. Virginia Electric & Power Co. v. N. L. R. B., 1943, 319 U.S. 533, 542–543, 63 S.Ct. 1214, 87 L.Ed. 1568. Respondents argue that the affected employees were already union members when the agreements were made and hence could not have been forced to join by the agreements. They were, however, deprived of their right to resign. The burden rested on respondents to show that even without the unlawful discrimination, the Company's employees would have maintained their membership in Local 60. N. L. R. B. v. Remington Rand, Inc., 2 Cir., 1938, 94 F.2d 862, 872, certiorari denied 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540.

■■ Contrary to respondents' contention, we find reimbursement of fees to be a proper and appropriate remedy to restore employees to the position they would have enjoyed but for the illegal practices. There is no showing that the Order represents any attempt to attain ends other than effectuation of the policies of the Act. Virginia Electric & Power Co. v. N. L. R. B., supra, 319 U.S. 539, 540, 63 S.Ct. 1218. The Board has wide discretion in ordering affirmative action against those found to have committed unfair labor practices. Dixie Bedding Mfg. Co. v. N. L. R. B., 5 Cir., 1959, 268 F.2d 901, 907; N. L. R. B. v. Broderick Wood Products Co., 10 Cir., 1958, 261 F.2d 548, 559. The complex problem presented is broader than the interests of the named litigants. The rights of an indeterminate number of employees and of the public are involved.

Substantial evidence in the record as a whole supports the Board's findings and shows that the Board has directed a just and reasonable remedy under the circumstances herein. Other arguments advanced by respondents, not herein discussed, have received careful examination in arriving at the conclusions expressed. The Board's petition for enforcement of its Order is granted.