NATIONAL LABOR RELATIONS BOARD
v. DENVER BUILDING & CONSTRUC-
TION TRADES COUNCIL et al.

No. 4260.

United States Court of Appeals
Tenth Circuit.

Oct. 18, 1951.

Rehearing Denied Jan. 5, 1952.

Dominick L. Manoli, Washington, D. C.
(George J. Bott, David P. Findling, A.
Norman Somers, Washington, D. C., and
Margaret M. Farmer, Washington, D. C.,
on the brief), for petitioner.

Philip Hornbein, Jr., Denver, Colo. (Philip Hornbein, Denver, Colo., on the brief),
for respondents.

Before PHILLIPS, Chief Judge, and
HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is a conventional proceeding under
Section 10(e) of the National Labor Rela-

tions Act, as amended, 29 U.S.C.A. § 151, et seq., in which the National Labor Relations Board seeks enforcement of its order of August 7, 1950, against the Denver Building and Construction Trades Council, the International Union of Operating Engineers, Local No. 9, and International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 24. The order sought to be enforced required respondents to (1) cease and desist from threatening to picket or picketing Henry Shore to compel him to make membership in the respondents' organization a condition of employment, except in accordance with the proviso of Section 8(a) (3) of the Act, or in any like manner causing or attempting to cause Henry Shore to discriminate against his employees in violation of Section 8(a) (3) of the Act, (2) to take the following affirmative action which the Board found would effectuate the policy of the Act: (a) Post appropriate notices, etc; (b) Notify the Regional Director in writing what steps respondents had taken to comply with the order

The controversy arose out of a construction project known as the "Cherry Creek Project", on which Henry Shore, a contractor, was engaged. Shore employed both union and non-union labor on the project. Two pickets were placed on the job by the Union. The question is whether these pickets were placed on the job to enforce a union demand for the employment of all union workers and the exclusion of non-union laborers and to bring economic pressure against Shore to compel him to comply with this demand, in violation of Section 8(a) (3) of the Act, as contended by Shore and as found by the Board, or merely to call attention to the fact that the unskilled non-union laborers were being paid at the rate of $1.10 or $1.20 per hour, whereas the union scale for such work was $2.00 per hour, and the prevailing wage, as determined by the Secretary of Labor, under the Davis-Bacon Act was $1.87½ per hour.

Under Section 8(a) (3) of the Act, it is an unfair labor practice for an employer to discriminate against employees because of union or non-union affiliation. Under Section 8(b) (2) of the Act, it is an unfair labor practice for a union to attempt to coerce and induce an employer to violate Section 8(a) (3) by compelling him to discriminate against non-union or union workers in hiring employees. By Section 8(c) of the Act, the Union may express its views, arguments or opinions, or may disseminate them in like manner with respect to the labor practices of an employer, so long as such expressions contain no threat of reprisal or force or promise of benefit.

The respondent unions contend that they did no more than they were empowered to do under Section 8(c) of the Act and that they did not intend by use of the two pickets to coerce Shore or by threats of economic reprisals compel him to discharge the non-union employees in violation of his obligations under Section 8(a) (3) of the Act. In support of their contentions, they point to the fact that only two pickets were employed; that the picketing was peaceful and without incident; and that the union employees continued to work and at all times crossed the picket line.

There is, however, substantial evidence which tends to support a contrary view. It was the Board's duty to resolve this conflict in the evidence and we may not overthrow its finding, if supported by substantial evidence.[1]

In every case arising under the Act in which enforcement of the Board's order is being resisted, whether by the employer, the employees or their labor union representatives, one of the invariable grounds thereof is that there is no evidence to support the findings of the Board. A detailed recitation of the evidence, upon which the court bases its conclusions, is set out in most of the decided cases. Such recitation of facts or the continued practice thereof,

1. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Fairmont Creamery Co., 10 Cir., 144 F.2d 128; Boeing Airplane Co. v. National Labor Relations Board, 10 Cir., 140 F.2d 423; Utah Copper Co. v. National Labor Relations Board, 10 Cir., 139 F.2d 788.

except for unusual situations, adds nothing of value to the law and is of no value as a precedent in succeeding cases, because in the end each case must stand on its own peculiar facts. In the interest of brevity and to not further encumber legal publications with matter that has no value in future cases, we do not detail the evidence upon which our conclusions rest. Suffice it to say, we have carefully examined the record and conclude that the Board's findings find support therein.

 It is further contended that the court has no jurisdiction because the controversy has become moot. It is pointed out that an injunction was issued in a state court action enjoining the picketing in October, 1948; that the pickets had been withdrawn; that no picketing had been carried on for more than a year prior to October 18 and 19, 1949, the dates on which the hearings were held by the trial examiner and that the project in question had been completed on July 1, 1949, more than three months before the hearings before the examiner. From this it appears that the controversy upon which this proceeding is predicated had come to an end and that no relationship or points of contact exist between the parties. Whether under these circumstances this proceeding should have been prosecuted to completion may well be questioned, but that question was addressed to the discretion of the Board and did not affect the jurisdiction of this court. Shore is still engaged in the contracting business. No doubt he will have other projects and will therein employ the same labor practices which led to this controversy. Future controversies may arise between him and the unions with respect to such labor practices. It is not beyond the realm of probability that the acts of the unions which were found to be violations of the labor act, if not prohibited, may be repeated. Under these facts and the decision of the Supreme Court in Carpenters Union v. Labor Board,

341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309, the controversy is not moot.[2]

An order of enforcement will be entered.

---

2. In Carpenters Union v. Labor Board, 341 U.S. 707, 71 S.Ct. 966, 971, supra, the Supreme Court said: "The use of such pressure on this renovation project was merely a sample of what might be repeated elsewhere if not prohibited.

The underlying dispute between petitioners and Watson's has not been shown to have been resolved."

See also National Labor Relations Bd. v. United Brotherhood, 10 Cir., 184 F. 2d 60.