280 F.2d 616
 INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL-CIO, Petitioner
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
BERNHARD-ALTMANN TEXAS CORPORATION, Respondent.
 No. 15038.
 No. 15079.
 United States Court of Appeals District of Columbia Circuit.
 Argued December 3, 1959.
 Decided May 19, 1960.
 
 Mr. Charles J. Morris, Dallas, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of Court, with whom Messrs. Morris P. Glushien, New York City, and L. N. D. Wells, Jr., Dallas, Tex., were on the brief, for petitioner in No. 15038.
 Mr. Frederick U. Reel, Atty., National Labor Relations Board, with whom Messrs. Thomas J. McDermott, Associate Gen. Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, and Herman M. Levy, Atty., National Labor Relations Board, were on the brief, for respondent in No. 15038 and petitioner in No. 15079.
 Mr. Wallace M. Cohen, Washington, D. C., entered an appearance for respondent in No. 15079.
 Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and FAHY, Circuit Judges.
 Mr. Justice BURTON.
 
 
 1
 These cases present the question whether it was an unfair labor practice, under §§ 8(a) (1) and (2) and 8(b) (1) (A) of the National Labor Relations Act, as amended in 1947,[1] for an employer and a union to enter into a collective-bargaining agreement recognizing the union as the exclusive bargaining representative of all of the employees in the proposed bargaining unit, although the union had not been authorized to act as their collective-bargaining representative by a majority of the employees. For the reasons hereafter stated, we are of the opinion that such an agreement unlawfully restrained nonparticipating employees from their free exercise of the rights of self-organization guaranteed to them by § 7 of the Act[2] and also gave unlawful support to the participating union. We therefore agree with the National Labor Relations Board's decision that such conduct in the cases before us was an unfair labor practice which the Board properly ordered discontinued.
 
 
 2
 The General Counsel for the National Labor Relations Board filed a complaint against the Bernhard-Altmann Texas Corporation, an employer, manufacturing knitwear for interstate commerce at San Antonio, Texas. The complaint charged the employer with entering into an exclusive recognition agreement with the International Ladies' Garment Workers' Union, AFL-CIO, at a time when the union did not represent a majority of the corporation's employees in any appropriate bargaining unit. It also charged the employer with thus contributing to the support of the union in violation of § 8 (a) (2), and with interfering with the free exercise of rights, guaranteed to the employees by § 7 of such Act, in violation of § 8(a) (1). In a separate complaint the General Counsel also charged that the union had violated § 8(b) (1) (A) by entering into the above-mentioned agreement with the employer and thus restraining and coercing some of the latter's employees in the free exercise of rights guaranteed to them by § 7. After a hearing in which the cases were consolidated, the trial examiner issued an intermediate report recommending that each complaint be dismissed in its entirety. However, the Board, on exceptions filed by the General Counsel, disagreed with the trial examiner's conclusions. The Board found that the employer and the union had respectively engaged in the alleged unfair labor practices. It accordingly ordered each of them to cease and desist from such practices and to hold a representative election. One member concurred in part and dissented in part. 122 N.L.R.B. 1289, 1297. The union now asks this Court to set aside the Board's order, whereas the Board asks that its order be enforced. Except for filing its answer, the employer has not participated in these proceedings.
 
 
 3
 The facts found by the Board are supported by substantial evidence on the record considered as a whole and are conclusive here. 61 Stat. 148, 29 U.S. C.A. § 160(e). Our jurisdiction is not questioned.
 
 
 4
 Beginning in 1956, the union engaged in a campaign to organize the employer's plant. It obtained a substantial number of authorization cards signed by employees designating the union as their bargaining representative. In July 1957, a number of the employees struck in protest against a wage reduction and the union, on behalf of some of the strikers, endeavored to settle the controversy. On August 30, 1957, during these negotiations, a "memorandum of understanding" was signed by the employer and the union. In that memorandum the employer expressly recognized the union as the exclusive bargaining agent for its production and shipping employees, and the union stated that it had been designated by a majority of such production and shipping employees to act as the exclusive bargaining representative of all of such employees. There was testimony that the union maintained a running check of the number of authorization cards it held against a list of the employees believed by it to be working in the bargaining unit. When the union's Regional Director became convinced that the union had obtained cards from a majority of the workers in the unit, he so stated to the employer. The latter made no independent check of the cards and took no other steps to investigate the assertion. Likewise, there is no evidence that at the time of concluding the agreement the union attempted to obtain a definitive list of the employees within the proposed bargaining unit.
 
 
 5
 In October 1957, the memorandum was followed by a formal collective-bargaining agreement. This covered many subjects appropriate for such a contract and recited that a majority of the employees in the bargaining unit had designated the union as their exclusive bargaining representative. The Board found that, on the critical date of August 30, the union had not been designated as a bargaining agent, either by the votes or by the signed cards of a majority of the employees in an appropriate bargaining unit. The union disputes the Board's finding of lack of majority status on August 30. While there were questions raised as to the status of some employees, the Board was justified in the finding that the union did not represent a majority of the employees in the designated unit on the critical date.[3]
 
 
 6
 The intent of the National Labor Relations Act, as amended, and especially of § 7, is that the decision whether or not to be represented by a bargaining representative and also the choice of that representative shall be the uncoerced decision of a majority of the employees in an appropriate unit. Obstruction of that freedom of choice, by either the employer or the union, deprives some of the employees of this guaranteed right and is an unfair labor practice under § 8. It is difficult to conceive of a clearer restraint on the employees' right of self-organization than for their employer to enter into a collective-bargaining agreement with a minority of the employees. If upheld, that action would foreclose any other choice of a bargaining representative by a majority of the workers in the unit. It would not only impose the minority's bargaining agent upon the nonparticipating majority, it would also practically preclude the majority, during the term of the contract, from casting off the union as bargaining representative. Even if the employees might surmount the difficulties inherent in challenging the established order by presenting a petition for decertification under § 9(c),[4] it is quite likely, under the Board's decisions, that the "contract-bar" rule would prevent the majority from asserting the union's lack of majority status during the two-year term of the contract. It has been held repeatedly by the Board that in a decertification proceeding, where the contract bar has been asserted, the petitioners are not permitted to show the lack of majority status of the union at the time the contract was made.[5]
 
 
 7
 It has been repeatedly found an unfair labor practice under § 8(a) (1) and (2) for an employer to conclude a collective-bargaining agreement with a minority union.[6] In most of these cases there were aggravating factors such as the presence of a rival union or the imposition of a union security provision, but those cases do not appear to turn on the presence of these aggravating factors, nor are these factors always present. We see no material distinction from the viewpoint of the employees' § 7 organizational rights between the rival union situation, where there is interference in the choice between bargaining agents, and the instant cases, where the interference affects the choice whether to bargain through a collective representative or individually.
 
 
 8
 As early as N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 44-45, 57 S.Ct. 615, 81 L.Ed. 893, it has been recognized that implicit in the duty of the employer to recognize the majority's representative of his employees as the exclusive bargaining representative is the correlative duty to deal with no agent other than that chosen by the majority.[7] Also implicit is the obligation on the part of the employer to make sure that the representative does in fact represent a majority of the employees. Conversely, it is the duty of those who seek to establish themselves as exclusive bargaining agents to make sure that they have the mandate of those in whose name they speak.
 
 
 9
 Section 8(b) (1) (A), as enacted in 1947, prohibits unions from invading the rights of employees under § 7 in a fashion comparable to the activities of employers prohibited under § 8(a) (1). That the provisions were intended to be parallel is indicated by the similarity of the language employed, and is confirmed by the legislative history of the provisions.[8]
 
 
 10
 Section 8(a) (1), as it appeared in the original Wagner Act as § 8(1), applied only to employer conduct. The major purpose which the sponsors of the 1947 amendments sought to achieve was to impose on unions the same restrictions as those imposed by § 8(1) on employers respecting intrusion on protected employee activity. The omission of the word "interference" from subsection (b) (1) may not be devoid of significance when considering whether labor organizations are permitted wider latitude in peacefully persuading employees to organize than is permitted employers in opposing collective bargaining. But where union activities go beyond the level of persuasion and amount to a foreclosure of the exercise of § 7 rights by the employees, we find no basis for holding that the provisions should have a different meaning when applied to a labor organization than when applied to an employer.
 
 
 11
 This Court's decision in Drivers, Chauffeurs, Helpers, Local Union No. 639 (Curtis Bros.) v. N. L. R. B., 107 U.S. App.D.C. 42, 274 F.2d 551, decided November 26, 1958, and the Supreme Court's affirmance of that decision, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710, do not militate against enforcement of the Board's order in the instant cases.[9] In the Curtis Bros. case a minority union was engaged in peaceful picketing in an effort to secure the recognition of a union which recently had been defeated in a certification election. This Court held that such picketing was not an unfair labor practice. The instant cases involve much more direct interference and restraint of § 7 rights than did the Curtis Bros. case. In the instant cases the recognition of the minority union is a fait accompli depriving the majority of the employees of their guaranteed right to choose their own representative. In the Curtis Bros. case the issue was not whether the recognition of the minority union as the exclusive bargaining representative was a violation of the statute. It was only whether the preliminary picketing seeking to gain members and recognition was a violation of § 8(b) (1) (A).
 
 
 12
 The instant cases do not involve picketing and do not involve either the right of free expression or the right to strike which are protected by § 13 of the Act.[10] International Brotherhood of Teamsters, Local, etc. v. Vogt, Inc., 1957, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347; Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. The practices involved here, unlike recognitional and organizational picketing, are not specifically limited in the other unfair labor practice provisions of § 8.
 
 
 13
 An employer need not bargain with an uncertified representative if he has grounds in good faith for doubting the union's majority status,[11] but he is under a duty to bargain if he has adequate grounds for believing that the union does represent a majority.[12] It is difficult to establish ground for believing or disbelieving the existence of a majority status for a union in the face of a failure to take any steps to determine that status.[13]
 
 
 14
 The central consideration here is not merely whether the employer or the union entertained a bona fide belief that the union had majority support, but whether that belief was arrived at through an adequate effort to determine the true facts of the situation.
 
 
 15
 Questions may arise as to the membership of particular employees in the bargaining unit or the validity of the union authorizations. In most of these situations clear and convincing proof of the employees' status will be readily available to the parties in the form of personnel records and other direct proof of employment status. If informal methods are not available, or they do not prove dispositive, § 9(c) provides a formal method for an authoritative Board determination of majority representative status.
 
 
 16
 Organizational efforts will not generally turn on such thin majorities as to require a complex computation of majority status. In such a case, simple procedures are available to demonstrate majority status. It is only when the question is close that more is required. If the parties' determination of majority status is questionable, the burden is on the General Counsel to establish the alleged unfair practice and lack of majority status.
 
 
 17
 The net effect of the Board's policy is to require that labor organizations and employers refrain from recognizing by agreement a sole bargaining representative until such time as they have adequately established that such agent represents a majority of the employees in the bargaining unit. Allowing the union or the employer to do otherwise would permit them, by agreement, to undermine the employees' rights under § 7.
 
 
 18
 Accordingly, the union's petition to set aside the order is denied and the Board's order shall be enforced in full.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(a)
 
 
 [1]
 "§ 8. (a) It shall be an unfair labor practice for an employer —
 "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;
 "(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * * *
 * * * * * * *
 "(b) It shall be an unfair labor practice for a labor organization or its agents —
 "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *." 61 Stat. 140, 141, 29 U.S. C.A. § 158(a) (1) and (2), and (b) (1) (A).
 
 
 [2]
 "§ 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)." 61 Stat. 140, 29 U.S.C.A. § 157
 
 
 [3]
 The union contends that although the August 30 memorandum may be invalid, the formal contract executed in October when the union had achieved majority status is valid. The fact that, by October, the union may have achieved a majority status during the period that it maintained an unlawful agreement is irrelevant. Local Lodge 1424, etc. v. N. L. R. B., 362 U.S. 411, 414, 80 S.Ct. 822, 4 L.Ed.2d 832, reversing on other grounds, 1959, 105 U.S.App.D.C. 102, 107, 264 F.2d 575, 580. See Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 703-705, 64 S.Ct. 817, 88 L.Ed. 1020, and Joy Silk Mills, Inc. v. N. L. R. B., 1950, 87 U.S.App.D.C. 360, 372, 185 F.2d 732, 744, certiorari denied 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350
 
 
 [4]
 See N. L. R. B. v. Pennsylvania Greyhound Lines, Inc., 1938, 303 U.S. 261, 267, 58 S.Ct. 571, 574, 82 L.Ed. 831. "It [Congress in passing the NLRA] had before it the Railway Clerks case which had emphasized the importance of union recognition in securing collective bargaining * * * and there were then available data showing that once an employer has conferred recognition on a particular organization it has a marked advantage over any other in securing the adherence of the employees, and hence in preventing the recognition of any other."
 
 
 [5]
 See In re Columbia River Salmon & Tuna Packers Assn., 91 N.L.R.B. 1424 (1950); In re Electro Metallurgical Co., 72 N.L.R.B. 1396 (1947); Sport Girl Co., 26 LRR Man. 1284 (1950); In re Wilmington Terminal Warehouse Co., 68 N.L.R.B. 299, 302 (1946)
 
 
 [6]
 See e.g., Dixie Bedding Mfg. Co. v. N. L. R. B., 5 Cir., 1959, 268 F.2d 901, 905; District 50, United Mine Workers, etc. v. N. L. R. B., 4 Cir., 1956, 234 F.2d 565, 569; N. L. R. B. v. National Container Corp., 2 Cir., 1954, 211 F.2d 525, 536; N. L. R. B. v. Gottfried Baking Co., 2 Cir., 1954, 210 F.2d 772, 782; Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 1944, 142 F.2d 371, 379-380, certiorari denied 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580; United Transports Inc., CCH Lab.Law Rep. (4th ed. 1959) ¶ 56,192 (123 N.L.R.B. No. 60); Grand Union Co., 122 N.L.R.B. 589; Coast Aluminum Co., 120 N.L.R.B. 1326 (1958); R. B. Wyatt Mfg. Co., 117 N.L. R.B. 700 (1957), affirmed sub. nom. N. L. R. B. v. Steel, Metals, Alloys, etc., Local 810, 2 Cir., 1958, 253 F.2d 832; International Metal Products Co., 104 N. L.R.B. 1076, 1077 (1953); John B. Shriver Co., 103 N.L.R.B. 23 (1953); In re Ken-Rad Tube & Lamp Corp., 62 N.L.R.B. 21 (1945)
 
 
 [7]
 See North Electric Mfg. Co. v. N. L. R. B., 6 Cir., 1941, 123 F.2d 887, 889-890, certiorari denied 1942, 315 U.S. 818, 62 S. Ct. 906, 86 L.Ed. 1215; Texarkana Bus Co. v. N. L. R. B., 8 Cir., 1941, 119 F.2d 480, 484; N. L. R. B. v. Union Pacific Stages, Inc., 9 Cir., 1938, 99 F.2d 153, 159; S.Rep. No. 573, 74th Cong., 1st Sess. 13 (1935)
 
 
 [8]
 For expressions of intent that the two provisions establish comparable standards for employer and union conduct to those established for employer conduct by § 8(1) see e.g., the views of Senators Taft, Ball, Donnell and Jenner, S. Rep. No. 105, 80th Cong., 1st Sess. 50 (1947); statement of Senator Ball upon introducing § 8(b) (1) (A) as an amendment, 93 Cong.Rec. 4016, and Senator Ball's further statements during debate, id., at 4432-4433; Senator Taft in debate, id., at 4025, 4436; remarks of Senator Smith, id., at 4435
 
 
 [9]
 Since its decision in Curtis Bros. the Supreme Court has assumed in Local Lodge No. 1424, etc. v. N. L. R. B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832, that the conclusion of a collective-bargaining agreement by a minority union may be an unfair labor practice. See id., 362 U.S. at page 414 and dissenting opinions at pages 429, 433, 80 S.Ct. at pages 825, 833, 834
 
 
 [10]
 61 Stat. 151
 
 
 [11]
 Mount Hope Finishing Co. v. N. L. R. B., 4 Cir., 1954, 211 F.2d 365, 373; A. L. Gilbert Co., 110 N.L.R.B. 2067 (1954); Administrative Decisions of the General Counsel, 5 CCH Lab.Law Rep. ¶¶ 56,470, 56,537, 56,548 (1959). The rule is otherwise where a labor organization has recently been certified by the National Labor Relations Board. Brooks v. N. L. R. B., 1954, 348 U.S. 96, 75 S. Ct. 176, 99 L.Ed. 125
 
 
 [12]
 Joy Silk Mills, Inc. v. N. L. R. B., 1950, 87 U.S.App.D.C. 360, 369, 185 F.2d 732, 741, certiorari denied 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350
 
 
 [13]
 Failure to investigate a union's majority claim and bargain if it is substantiated is an unfair labor practice. N. L. R. B. v. Inter-City Adv. Co., 4 Cir., 1951, 190 F.2d 420, certiorari denied 1952, 342 U.S. 908, 72 S.Ct. 301, 96 L.Ed. 679; N. L. R. B. v. Crown Can Co., 8 Cir., 1943, 138 F.2d 263, certiorari denied 1944, 321 U.S. 769, 64 S.Ct. 527, 88 L. Ed. 1065; In re Metal Textile Corp. of Delaware, 47 N.L.R.B. 743, 753 (1943)
 
 
 
 19
 FAHY, Circuit Judge (dissenting).
 
 
 20
 The doubts which surrounded the problem presented by this case have been resolved, as it seems to me, by the necessary implications of the recent decisions of the Supreme Court in N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710, referred to as the Curtis case, and United Rubber Cork, Linoleum and Plastic Workers, etc. v. N. L. R. B., 362 U.S. 329, 80 S.Ct. 759, 4 L.Ed.2d 768. The Court held in these cases that peaceful picketing, or a peaceful strike, by a union which did not represent a majority of the employees, to obtain immediate recognition as the exclusive bargaining agent in Curtis, or to obtain a contract in United Rubber Workers, was not an unfair labor practice under section 8(b) (1) (A) of the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S.C.A. §§ 141-166. The subject was exhaustively considered in Curtis. In the absence of an objective explicitly condemned by the Act, such as appears in section 8(b) (4), peaceful economic measures were held not to constitute such restraint or coercion of employees in the exercise of their rights guaranteed by section 7 as to constitute unfair labor practices within the meaning of section 8(b) (1) (A). From this it seems to me to follow that the obtaining of such recognition by peaceful economic measures, unaccompanied by any unlawful contractual provision, is not an unfair labor practice on the part of the union under section 8(b) (1) (A). Insofar, therefore, as the Board order rests upon recognition thus accorded I think it is not supported.
 
 
 21
 I believe it also follows that the employer on his part does not violate section 8(a) (1) or section 8(a) (2) by according such recognition or entering into such an agreement. There was no rival union competing for recognition. Moreover, the employer was not interfering with the freedom of the employees by conferring exclusive recognition in furtherance of the employer's own preference for or desire to assist one union over another. Nor was the contract one for a union shop, see Local Lodge No. 1424 v. N. L. R. B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832, or claimed to be unlawful except that it accorded exclusive recognition to the union.[1] The strike was a peaceful one by the only union seeking recognition and bargaining status. The union lawfully obtained the settlement. It would frustrate the union's right so to do were it to be held that the employer, in agreeing to such a settlement, engaged on its part in an unfair labor practice which invalidated the settlement reached. Moreover, it seems to me that the contrary position requires an employer to suffer the consequences of a lawful strike without being able lawfully to bring it to an agreed end unless and until the union gains the adherence of a majority of the employees.
 
 
 22
 My position does not mean that the recognition in the form given is protected should a majority of the employees at any time repudiate the union or choose another bargaining agent. On the contrary, any existing "contract bar" policy or regulation of the Board is I think inapplicable to such a contract with a minority union, though made in such circumstances as are presented by this case.
 
 
 23
 I would set aside the order of the Board.
 
 
 
 Notes:
 
 
 [1]
 The Board decision does not rest to any extent upon any other provision in the contract. I treat the case on the same basis