NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GEORGE GROH AND SONS,
Respondent.

No. 7375.

United States Court of Appeals
Tenth Circuit.

March 23, 1964.

Glen M. Bendixen, Attorney, N.L.R.B., Washington, D. C. (Arnold Ordman, General Council, Dominick L. Manoli, Assoc. General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Attorney, N.L.R.B., on the brief), for petitioner.

William G. Haynes, of Lillard, Eidson, Lewis & Porter, Topeka, Kan., for respondent.

Before PICKETT, LEWIS and SETH, Circuit Judges.

PICKETT, Circuit Judge.

This proceeding is a petition to enforce an order of the National Labor Relations Board requiring respondent, a partner-ship engaged in the sheet metal business including roofing, heating and air conditioning at Emporia, Kansas, to bargain with the union[1] and to post appropriate notices. The Board's conclusion that the respondent violated sections 8(a) (5) and (1) of the National Labor Relations Act, as amended, (29 U.S.C. § 158(a) (5), (1),) was predicated upon the finding that the union represented a majority of respondent's employees and the refusal to bargain was not based upon a "good faith" doubt of that majority representation. The sole question presented is whether there is substantial evidence, considering the record as a whole, to support the order.

It is the function of the Board and its trial examiner to weigh the evidence, appraise the credibility of witnesses, and determine the inferences to be reasonably drawn therefrom. N. L. R. B. v. Champa Linen Service Co., 10 Cir., 324 F.2d 28; N.' L. R. B. v. Machine Products Co., 10 Cir., 198 F.2d 313; N. L. R. B. v. Beatrice Foods Co., 10 Cir., 183 F.2d 726. The findings of the Board, if supported by substantial evidence, are conclusive upon the court. 29 U.S.C. § 160(e); 2 Am.Jur.2d Administrative Law, §§ 621, 688; N. L. R. B. v. Denver Bldg. & Const. Trades Council, 10 Cir., 192 F.2d 577; N. L. R. B. v. Fulton Bag & Cotton Mills, 10 Cir., 180 F.2d 68; N. L. R. B. v. Beatrice Foods Co., supra. This court will not substitute its judgment for that of the Board or trial examiner who heard the testimony and observed the witnesses. N. L. R. B. v. Lively Service Co., 10 Cir., 290 F.2d 205.

The facts tending to support the Board's order may be summarized as follows: On June 1, 1962, respondent, exclusive of office clerical employees, employed 11 regular full-time employees, about whose status there is no dispute. Seven of the full-time employees executed cards designating the union as their bargaining agent. The respondent contends that the bargaining unit should include an additional three part-time em-

1. Sheet Metal Workers' Internat'l Association, Local 77, AFL-CIO.

ployees and that the union did not have a majority.[2]

The organizational activities leading up to the demand for recognition began on May 23, 1962, when the union business agent, accompanied by a union attorney, met with some of the employees to discuss the possibility of union representation. They determined that the bargaining unit consisted of eleven employees and that they should have authorization cards from at least seven of these employees before demanding contract negotiations with respondent. Upon receipt of the seventh card on June 1st, the business agent and the attorney sent a telegram to George Groh, one of the partners, informing him of the majority authorization and requesting recognition for the purpose of negotiating wages, hours, and working conditions.

On June 4, the business agent telephoned Groh and requested a meeting for that purpose, which was held the following day at respondent's place of business in Emporia, Kansas. It is the events which transpired at that meeting and subsequent thereto which formed the basis of the finding of the lack of "good faith" in Groh's refusal to bargain. The meeting was attended by the union business agent, Bailey, its attorney, Kimbrough, and Groh. Kimbrough informed Groh that a majority of the employees had designated the union as its bargaining representative and that the union desired recognition. Groh asked permission to examine the cards but was told that this could not be done, but that if Groh doubted the majority status of the union, the authorization cards would be delivered to a responsible third party for examination. The president of a local college was suggested. Kimbrough testified that Groh then stated that this was not necessary as "he was satisfied we represented these people." When a wage scale was suggested to Groh, he asserted that his firm was not big enough for unionization and that the union would have to organize all his competitors. Kimbrough informed Groh of his legal obligation to bargain when a majority of his employees had designated a bargaining agent, and offered to meet with an attorney of Groh's choice to discuss the matter. Groh stated that Kimbrough

2. The three disputed employees were Richard Kuhlmann, age 21, brother of one partner in the firm; Kenneth Burenheide, age 18, college student; and Maynard Redeker, age 17, college student.

Kuhlmann had completed high school in 1959. He was employed on a part-time basis from the fall of 1959 until December 3, 1960, by respondent. After that date, he did not again work for respondent until April 30, 1962. Beginning on the latter date and continuing through June 1, 1962, he worked 7 days for a total of 53½ hours at such times as the work and his availability coincided. Kuhlmann testified that he is regularly engaged in farming, but the acquisition of additional equipment gave him greater free time. The examiner found that he was a regular part-time employee with a sufficient community of interest and expectation of continuing work as to make him a member of the bargaining unit. Kuhlmann's employment after June 1 was considered as a factor in determining his status as of that date.

Burenheide had completed high school in May, 1962. He had worked for respondent during the preceding summer from June 19, 1961, to August 31, as a full-time employee. After his return to school, he was not employed again until March 24, 1962, when he worked four hours, and on the following Saturday, when he worked eight hours. He did not work again until June 4, 1962, following completion of school. From June 4 to August 17 he worked full time. He indicated that he had worked possibly a week since starting college.

Redeker had also completed high school in May 1962 and worked for respondent during the summer of 1961. He worked one day each in April and May, 1962, for a total of 16½ hours. On June 4, 1962 he was again employed on a full-time basis which ended on August 17. He returned a week later and worked the full week of August 24.

Both Redeker and Burenheide indicated that they would like work during the school year if it were available and if they had the spare time. The examiner found that both were temporary and casual employees whose employment failed to establish such a pattern as would justify their inclusion in the bargaining unit.

and Bailey "were wasting * * * [their] time, that he wasn't interested in the union." Groh also stated that he could not discuss contract matters because one of the firm's partners was out of town, but agreed to notify Bailey upon his return so that a meeting could be held with all partners present. Near the end of the meeting, Groh mentioned that the work of one employee, who had been with the firm about 18 years, was deteriorating, that he was considering terminating his employment, and expressed the belief that the employee was "the fault of all this fuss we are having."

The next union contact with Groh was on June 12, when Kimbrough telephoned and asked for a bargaining meeting. During this conversation, Groh informed him that he still wanted no part of the union, and that if his employees were interested they could affiliate with a Topeka local. Groh then informed Kimbrough of an attorney to contact and that he (Groh) would call him right away. However, when Kimbrough called the attorney, he learned he was out of town and would not return for several days. Kimbrough again called Groh and was given the name of another attorney whom he was unable to reach until six days later, at which time Kimbrough was told by the attorney that Groh had not sought his services. On June 18, in response to Kimbrough's telephone call on that day, Groh stated that he had retained counsel in Topeka. On the same day the union received that counsel's letter indicating that a good faith doubt existed as to the majority representation of the union, and suggesting that the election procedures available be used.[3] That was the final contact between the union and Groh.

■■ In determining what employees are eligible to participate in the selection of a bargaining representative, the criterion is " * * * 'whether an employee is sufficiently concerned with the terms and conditions of employment in a unit

to warrant his participation in the selection of a bargaining agent.' " N. L. R. B. v. Belcher Towing Co., 5 Cir., 284 F.2d 118, 121; N. L. R. B. v. Joclin Mfg. Co., 2 Cir., 314 F.2d 627. In the Belcher case it was found proper to exclude the votes of one part-time employee and two college students with histories of summer employment, even though after the cut-off date, the part-time employee and one of the students became full-time employees. Although Burenheide and Redeker had requested employment, neither was employed by the Groh firm on the date recognition was requested. Students working during the summer months under a proper circumstance may be considered as members of a bargaining unit, but it is the responsibility of the Board to determine in each case whether they are sufficiently concerned with the interests of the other employees in the terms and conditions of their employment "to warrant * * * [their] participation in the selection of a bargaining agent." N. L. R. B. v. Belcher Towing Co., supra. The Board's finding that the employment of Burenheide and Redeker was casual and temporary and did not warrant their inclusion in the bargaining unit is not clearly erroneous. We find no indication that the respondent ever had a bona fide doubt of the majority status of the union. There is substantial evidence in the record to support the finding that a majority did exist.

■■ An employer's refusal to bargain is an unfair labor practice when a union has been designated by a majority of employees in an appropriate unit, and that refusal is not made in good faith. N. L. R. B. v. F. M. Reeves and Sons, Inc., 10 Cir., 273 F.2d 710, cert. denied 366 U.S. 914, 81 S.Ct. 1087, 6 L. Ed.2d 236; N. L. R. B. v. Trimfit of Calif., 9 Cir., 211 F.2d 206. The finding that the respondent's refusal to bargain was not made in good faith has the support of substantial evidence in the case

3. This was the first indication that the respondent had any doubt that the union had been designated by a majority of the employees as their bargaining representative.

at bar. During the meeting on June 5, Groh declined the union's offer to submit the authorization cards to a neutral third party; indicated that his operation was too small for unionization; and that his competitors should be organized also. He did not then question the claim that the union had authorization from a majority of the employees, and stated that he did not desire to bring in a third party to make the determination. During subsequent contacts Groh stated that he still wanted no part of the union and that his employees were free to join a Topeka local. On two occasions he informed the union of attorneys who could be contacted regarding the matter, but both were unavailable when called. There was testimony that when one of the attorneys was later contacted, he informed the union that Groh had not retained his services. From the circumstances and the testimony given, there is sufficient support for the conclusion that Groh's refusal to bargain was not made in good faith, but for the purpose of hindrance and delay.

The refusal of Kimbrough to show the signed cards to Groh was proper, since to do so would have deprived the employees of their secrecy of choice. However, the alternative method offered of submitting the cards to a third person was a reasonable method of ascertaining the truth of the claim. N. L. R. B. v. New Era Die Co., 3 Cir., 118 F.2d 500. An employer who refuses to bargain under any conditions cannot excuse his conduct on the ground that adequate proof was not presented. N. L. R. B. v. Clarksburg Pub. Co., 4 Cir., 120 F.2d 976. When adequate proof is available in a reasonable manner, its offer cannot in good faith be refused. N. L. R. B. v. Dahlstrom Metallic Door Co., 2 Cir., 112 F.2d 756.

"It is difficult to establish ground for believing or disbelieving the existence of a majority status for a union in the face of a failure to take any steps to determine that status." International Ladies' Garment Workers Union AFL–CIO v. N. L. R. B., 108 U.S.App.D.C. 68, 280 F. 2d 616, 622, aff'd 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762.

The contention that the Board's order is unduly broad because it requires that the respondent cease and desist from further violations of § 8(a) (1) of the Act, when no such violations were found to exist, cannot be sustained. An employer's unwarranted refusal to bargain with a designated union constitutes a violation of § 8(a) (5) and likewise a violation of § 8(a) (1). Pueblo Gas & Fuel Co. v. N. L. R. B., 10 Cir., 118 F.2d 304; Art Metals Const. Co. v. N. L. R. B., 2 Cir., 110 F.2d 148; N. L. R. B. v. Barrett Co., 7 Cir., 135 F.2d 959; Cf. N. L. R. B. v. Katz, 2 Cir., 289 F.2d 700, reversed on other grounds 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230.

The Board's order here involved is not unduly broad because it requires only that the respondent refrain from that species of conduct involved in the refusal to bargain. This is not the same as an order of the Board purporting to restrain an employer from violating the Act *in any manner* such as those involved in cases in which enforcement has been denied. See, for example, N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed 930; N. L. R. B. v. Local 369, International Hod Carriers, etc., 3 Cir., 240 F.2d 539.

We hold that there is substantial evidence in the record, considered as a whole, to support the Board's finding that respondent's refusal to bargain was not made in good faith.

The order will be enforced.