**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALBUQUERQUE PHOENIX EXPRESS, Respondent.**

**No. 8596.**

United States Court of Appeals
Tenth Circuit.

Nov. 16, 1966.

**452**

L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Allison W. Brown, Jr., Washington, D. C., Attorney, with her on the brief), for petitioner.

Leonard L. Pickering, Albuquerque, N. M., for respondent.

Before PICKETT and HICKEY, Circuit Judges, and BRATTON, District Judge.

HICKEY, Circuit Judge.

The Albuquerque Phoenix Express, hereinafter called Apex, was found to have engaged in an unfair labor practice under Section 8(a) (5) of the National Labor Relations Act.[1] The section forbids an employer to refuse to bargain collectively with representatives of his employees.

The local, "Teamsters organization" in Albuquerque, New Mexico, induced eight over-the-road truck drivers of Apex to sign applications designating the local as their representative for the purpose of collective bargaining. Apex employed at the most thirteen over-the-road drivers working out of the Albuquerque terminal on the date of the applications. The eight applications were enclosed in an envelope containing a letter advising the employer that the local represented the men and that the "master transportation agreement covered the employees." Apex received the letter and forwarded it to its attorney without examining the applications. The attorney returned the cards to the union advising that they should be retained until Apex requested their presentation. The union then wrote another letter advising the company of their position as representatives of the employees and expressing doubt as to the coverage by the national agreement, but requesting a meeting with Apex. This letter, in which the union had again enclosed the cards, was forwarded to counsel by the secretary to the president of Apex where it remained unopened until the hearing. A carbon copy of the described letter was sent to

Vivian Asplund, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick

---

1. 29 U.S.C. § 158(a) (5).

counsel who opened it and examined its contents. A petition was filed by the union with the National Labor Relations Board requesting an election as provided in the Act. Within the month after the foregoing transpired, Apex's President sought out a majority of the drivers, either individually or in groups of two, and requested them to tell him what their complaints were. A wage increase was unilaterally given to the over-the-road drivers during this time.

When the local filed an unfair labor charge against Apex for the unilateral wage increase and a failure to bargain, Apex withdrew the wage increase.[2] The local union withdrew the petition for an election, and a hearing on the charges pending was held. The decision of the hearing examiner was subsequently referred to the board for approval.

The national board found an unfair labor practice under Section 8(a)(5) and ordered Apex to negotiate with the union as the recognized bargaining agent. Apex resists a petition to this court to enforce the board's order.

We first consider: Are "over-the-road drivers" based in Albuquerque a bargaining unit under the terms of the Act? The board concluded they were and we agree.

"Section 9(b) of the Act provides that 'the Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof; * * *.' The courts have uniformally held that the Board has broad discretionary powers in determining appropriate units contemplated by the Act, and that such a determination by the Board will be disturbed only when it is so unreasonable and arbitrary as to exceed its power. [citations omitted]. 'It is well settled that the board's determination of the appropriateness of the unit will not be set aside by the reviewing court unless such finding is arbitrary or capricious. * * * * '"[3]

The next question: Was a proper demand made to Apex to bargain collectively? The letters referred to the attorney unread and unopened by the officers of the corporation are in evidence for consideration. The subsequent appearance of counsel at employee meetings, the letters written and the explanation of other writing disseminated sustain the conclusion that the attorney represented the employer. Knowledge gained by an attorney may be imputed to an employer. "The question is not one of legal liability of the employer in damages or for penalties on principles of agency or *respondeat superior*, but only whether the Act condemns such activities as unfair labor practices so far as the employer may gain from them any advantage in the bargaining process of a kind which the Act proscribes."[4]

"No particular form of words is necessary to apprise the employer [of union's demand]. Whatever the words used, they are to be viewed in the light in which they are uttered." 2 CCH Lab. L.Rep. ¶ 2530, at 6271; Essex Wire Corp., 102 N.L.R.B. 332 (1953). "It is not essential to the validity of a request to bargain that it be in writing. And no particular form is required. It suffices if the union makes it fairly clear that the employer is being requested to bargain." N. L. R. B. v. Rural Electric Co. Inc., 296 F.2d 523, 524 (10th Cir. 1961). The testimonies of the union representatives and the employees clearly indicate that both wanted to convey to the company that the union was the em-

---

2. Apex later restored the wage increase on its own initiative.

3. Mountain States Telephone & Telegraph Co. v. N. L. R. B., 310 F.2d 478, 479 (10th Cir. 1962).

4. H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514. 521, 61 S.Ct. 320, 85 L.Ed. 309 (1941).

ployees' agent for purposes of collective bargaining.

■ Although the union representative was not as articulate in his letters as Apex's counsel demanded, it is amply clear that they conveyed the idea that the union sought to represent the employees in bargaining for wages, hours and conditions.

In addition to the efforts of the organizer to give notice and make demand by certified mail, a petition was filed with the National Labor Relations Board on the day following the second letter of notice and demand, August 18, 1964. The filing of a petition expressing a desire for certification is itself sufficient to raise a question concerning representation, even though the union filing the petition is recognized by the employer. 2 CCH Lab.L.Rep. ¶ 2530.

■ The trial examiner having found that the local was the proper bargaining agent of the employees and the Board having affirmed the findings, the employer was bound to bargain collectively with the representative. "An employer's refusal to bargain is an unfair labor practice when a union has been designated by a majority of employees in an appropriate unit, and that refusal is not made in good faith." N. L. R. B. v. George Groh & Sons, 329 F.2d 265, 268 (10th Cir. 1964).

The record contains the following evidence regarding the employer's attitude toward bargaining with the union. Mr. Pope, a driver, testified, "And I believe Mr. Pickering said 'I'm sure you boys can understand why any company doesn't want to deal with the union.'" Mr. Lewis Winston, another driver, testified, "I said 'the only question I got is if the company wants to pay what everybody else pays why are they determined to keep us out of the union.' And that was

the last I had to say at the meeting." Q. "Did Mr. Pickering (Apex's attorney) say anything in response?" A. "The best I remember was 'that most companies prefer to operate without a union,' that's the best I can remember."

■ The certified letter was sent on July 29, 1964, supplemented by the letter of August 17, 1964, and the petition for recognition on August 18, 1964. Subsequent to these actions, Apex, the employer, took unilateral action relative to a working condition in Phoenix, and a wage increase scale affecting the unit employees. "The granting of economic benefits by the unilateral action of an employer while union organizational efforts are underway, or while a representation election is pending, is a violation of Sections 8(a) (1) and 8(a) (5) of the Act, 29 U.S.C.A. § 158(a) (1), (a) (5). It follows that the employer must bargain with the union. [citations omitted]." [5]

■ "Although the National Labor Relations Act has provided a formal mode for selection and rejection of bargaining agents through Board conducted elections, it does not provide that a union's majority status may not be established by other means." N. L. R. B. v. Western Meat Packers, Inc., 350 F.2d 804, 805 (10th Cir. 1965). Eight of thirteen employees of Apex signed authorization cards with the union.

■ We have examined the record and find that substantial evidence sustains the board's decision that Apex refused to bargain with a representative union; this refusal was not in good faith; thereby constituting an unfair labor practice in violation of Section 8(a) (5) of the Act.

The order of the board will be enforced.

5. Crown Tar & Chemical Works, Inc., v. N. L. R. B., 365 F.2d 588 (10th Cir. Aug. 1966).