WESTERN DISTRIBUTING CO. d/b/a
Western-Davis Company, Inc.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 78–1559.

United States Court of Appeals,
Tenth Circuit.

Submitted Feb. 15, 1979.

Decided Sept. 19, 1979.

Rehearing Denied Nov. 2, 1979.

Glenn A. Bergmann, Denver, Colo., for petitioner.

Kenneth Hipp, Deputy Asst. Gen. Counsel, and Jesse I. Etelson, Atty., Washington, D. C., for respondent.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This is a case in which the National Labor Relations Board seeks to impose a duty to bargain on an employer who doubts he has

one. Although the issues are not as sharply drawn as we would prefer, we discern in the record and in the briefs sufficient reason to deny enforcement of the NLRB's order.

On April 1, 1977, Davis Brothers, Inc. and Western Distributing Company agreed to "the equivalent of a merger" between the latter and the liquor division of Davis Brothers. Both concerns distributed wines and liquors in Colorado, serving essentially the same clientele. Davis Brothers maintained one warehouse in Denver. Western had one in Denver and one in Glenwood Springs, some 170 miles away. Unlike Davis Brothers, Western did not employ a unionized work force.

The April 1 agreement resulted in the acquisition by Western of enumerated Davis Brothers assets in exchange for money and other consideration. Western-Davis Company, the post-merger name under which Western conducted business, employed all 14 of the union employees formerly employed by Davis Brothers.[1] The new company also hired Davis Brothers' executive vice president, warehouse manager, assistant warehouse manager, and sales manager. All of these were transferred to the Denver warehouse formerly used by Western. All the former employees of Western were retained. Fourteen continued to work in the Western warehouse.[2] Three were employed at Glenwood Springs.

This controversy arose when the union which had represented the Davis Brothers employees sought to retain its representative status in the new company. Initially, the union wrote to the Davis Brothers concern to dispute that it had, as claimed, ceased doing business and to insist that a collective bargaining agreement was still in effect between the two. Next, on May 6 and June 20, the union filed unfair labor practice charges against Davis Brothers and Western-Davis respectively, alleging a refusal to bargain. The charge against Davis Brothers was withdrawn when the NLRB determined that the merger had taken place. The charge against Western-Davis was withdrawn when the NLRB learned that the union had never made a formal request to bargain. Ultimately, on August 17, the union did formally request that Western-Davis bargain. In denying this request, the company stated that it had "a good faith doubt that your union, in fact, represents an uncoerced majority of our employees in an appropriate bargaining unit." Record, vol. 2, at 218. The union then filed the instant unfair labor practice charge.

The resulting NLRB proceeding ended in a determination that Western-Davis was a successor employer obligated to bargain with the union. To reach this conclusion, the NLRB determined that Western-Davis was obligated to bargain as of April 1, 1977, the date of the merger. Focusing on the composition of the work force on April 1, the NLRB applied the bargaining unit definition utilized in the agreement between Davis Brothers and the union and therefore excluded from the scope of the bargaining unit the three Denver long-haul drivers formerly employed by Western. The Western-Davis employees in Glenwood Springs were also excluded.[3] These exclusions produced

---

1. The union representing these employees was the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 435. The union had recently concluded a bargaining agreement with Davis Brothers, but its certification was not of recent vintage.

2. Three of these employees were "long-haul" drivers. These employees operated semi-trucks on long road trips. Other Denver employees also engaged in deliveries, but used smaller vehicles and spent fewer days on the road.

3. The reasons for the distinctions may be briefly stated. As has been suggested in footnote 2, the long-haul drivers spent longer periods of time away from Denver than other drivers. They did not engage in warehouse work. The Glenwood Springs employees were geographically separated from Denver, were separately supervised, and somewhat differently compensated.

In disputing these exclusions, Western-Davis argues that the excluded Western long-haul drivers performed duties similar to the Davis Brothers "country drivers," which were included in the unit. It also contends that the Glen-

a bargaining unit comprised of 14 former Davis Brothers employees and 11 former Western employees. Inasmuch as the former Davis Brothers employees had been represented by a union, it was concluded that, as a successor employer, Western-Davis was obligated to bargain with that union.

Western-Davis raises a host of reasons on appeal why we should not enforce the NLRB's order to bargain. We focus on the claim that Western-Davis had good faith doubts about whether the union represented a majority of its employees.

 The general principles of relevant law are well established. Subjective good faith doubts about a union's majority status are insufficient to justify a refusal to bargain. The employer must demonstrate a rational basis in fact for doubting majority status. *N. L. R. B. v. King Radio Corp.*, 510 F.2d 1154, 1156 (10th Cir.), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975). Even if an employer is a "successor" for purposes of determining a duty to bargain, a good faith doubt about majority status will shield an employer from an unfair labor practice charge based on a refusal to bargain. *See Zim's Foodliner, Inc. v. N. L. R. B.*, 495 F.2d 1131, 1140 (7th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974).

 The NLRB relies on Western-Davis' alleged successorship status to impose a duty to bargain as of April 1. Whether the merger in this case constitutes the kind of business acquisition to which the successorship doctrine applies is a question of some difficulty.[4] However, it is a question we need not reach. Even if Western-Davis was a successor employer capable of inheriting Davis Brothers' duty to bargain with the union, that duty could not have arisen until a request to bargain was made. *See, e. g., N. L. R. B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 297–98, 59 S.Ct. 501, 83 L.Ed. 660 (1939); *N. L. R. B. v. Eagle Material Handling, Inc.*, 558 F.2d 160, 170 (3d Cir. 1977). We hold that no sufficient bargaining request was made until the union issued its formal demand on August 17.[5] At that time the employer's doubts about the union majority status were justified.

Western-Davis hired 13 new employees between April 1 and August 17.[6] As of

---

wood Springs operation is "a very integral part of the Western-Davis operations" and "is subject to the complete authority of Western-Davis operations in Denver." Reply Brief for Appellant at 7.

4. Proper invocation of the successorship doctrine seeks to preserve a labor relations status quo when the only significant change is in employer identity. More than that appears to have changed here. Although the former Davis Brothers employees were hired as a group, they were transferred to a new location to join a large, preexisting group of nonunion employees. In such altered circumstances, it may be inappropriate to invoke the successorship doctrine to preserve a "status quo." Such an invocation may have the effect of transforming the labor relations situation by imposing union representation on a group of employees which have previously expressed no interest in being represented. Such transformations may be better left to elections.

5. We do not regard the union's April 1 telephone inquiry regarding the merger as containing a bargaining request. Neither did the subsequent letter to Davis Brothers, in which the union challenged the fact that Davis Brothers

had gone out of business. While it is true that the form of the words is not critical to a bargaining request, the union must nonetheless make it "fairly clear that the employer is being requested to bargain." *N. L. R. B. v. Albuquerque Phoenix Express*, 368 F.2d 451, 453 (10th Cir. 1966). These communications were not sufficiently clear.

The strongest argument made by the NLRB in this connection is that the unfair labor practice charges filed on May 6 and June 20 indicated a desire to bargain. We agree that the complaints implicitly evidenced such a desire, but we are not convinced that complaints should be construed as requests to bargain. A complaint should only follow the refusal of a request to bargain. Apparently the NLRB has changed its mind on this point. As we have already noted, the June 20 complaint against Western-Davis was withdrawn precisely because there had been no prior request to bargain.

6. The opinion of the administrative law judge reported:

Between April 1 and [the union's] August 17 demand letter, Western-Davis' rank-and-file complement in Denver grew by 9 through

August 17, Western-Davis' employees coming within the scope of the designated bargaining unit included 13 or 14 ex-Davis Brothers employees, 10 or 11 ex-Western employees,[7] and six employees who had been previously employed by neither concern. At most, 14 of these 30 employees could be deemed union supporters.[8] As they did not constitute a majority, Western-Davis had an objectively valid basis for concluding it had no obligation to bargain with the union.

 The NLRB seeks to avoid this conclusion by suggesting that it is appropriate to determine the level of employee support for the union as of April 1 and then presume subsequently hired employees supported the union in the same proportion. Although this general presumption is appropriate enough in other circumstances,[9] it makes no great sense to invoke it in a successorship-type context to bind an employer to a ratio of union support which existed only at a point in time well before he was requested to bargain.

Our rejection of the applicability of the NLRB's presumption in this circumstance accommodates reasonable employer expectations. On being requested to bargain by a union with which an employer has had no collective bargaining relationship, an employer with a modicum of awareness of the National Labor Relations Act is likely to ask: "Do a majority of my employees favor representation by this union?" It is not likely that he will inquire: "Did a majority of my employees favor representation by this union four months ago?"

----

the hire of 10 new employees, of whom three were long-haul drivers, and the severance of one; and the Glenwood Springs complement grew by three.
Record, vol. 3, at 261.

7. The numerical uncertainty results from the fact that one employee who was working on April 1 left before August 17. The record does not reveal his prior employer.

8. This result is reached even when the Glenwood Springs employees and the long-haul drivers are excluded from the designated bargaining unit. Since their inclusion would only bolster the non-union majority, we need not decide whether it was appropriate for the NLRB to exclude them from the unit in deter-

----

The question of good faith doubt about a union's claimed majority status must be answered in light of the situation at the time an employer is requested to bargain. In this case, that time was August 17. The NLRB would have us look at August 17 through the spectacles of retrospectivity and presumption. We do not share the NLRB's view of the matter. We decline to eliminate by artifice the objective basis for good faith doubt supporting Western-Davis.[10]

Enforcement denied.

McWILLIAMS, Circuit Judge, dissents.

----

mining whether Western-Davis was obligated to bargain with the union.

9. See, e. g., Pioneer Inn Assocs. v. N. L. R. B., 578 F.2d 835, 840 (9th Cir. 1978). But see N. L. R. B. v. Massachusetts Mach. & Stamping, Inc., 578 F.2d 15, 19–20 (1st Cir. 1978).

10. In adopting this view of the case, we have not relied on the fact that many Western-Davis employees signed a petition expressing aversion to unionism. This petition was generated after the employer had refused to bargain and thus could not have been a reason for its refusal. See W & W Steel Co. v. N. L. R. B., 599 F.2d 934 (10th Cir. 1979).