169 F.3d 378
 160 L.R.R.M. (BNA) 2681, 137 Lab.Cas. P 10,371
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
International Union, United Automobile, Aerospace And
Agricultural Implement Workers of America, AFL-CIO
(UAW), Intervenor,
v.
AUTODIE INTERNATIONAL, INC., Respondent.
 No. 97-5288.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 15, 1998.
Decided March 2, 1999.
 
 Richard A. Cohen (argued), National Labor Relations Board, Office of the General Counsel, Washington, D.C.; John D. Burgoyne, Peter Winkler, Aileen A. Armstrong (briefed), National Labor Relations Board, Appellate Court Branch, Washington, D.C.; Joan Hoyte, National Labor Relations Board, Washington, DC, for Petitioner.
 Michael L. Fayette (argued and briefed), Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI; Jordan Rossen (briefed), Nancy Schiffer (briefed), Associate General Counsel, International Union, UAW, Detroit, Michigan, for Intervenor.
 David B. Gunsberg (argued and briefed), Gunsberg & Breskin, Bloomfield Hills, Michigan, for Respondent.
 Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.
 MERRITT, J., delivered the opinion of the court, in which GILMAN, J., joined. NORRIS, J., concurred in the result only.
 MERRITT, Circuit Judge.
 
 
 1
 The National Labor Relations Board seeks enforcement of its order of January 11, 1996, directing Respondent Autodie International, Inc. to cease and desist from certain unfair labor practices.[1] The NLRB found that Autodie International had committed several unfair labor practices in violation of the National Labor Relations Act, 29 U.S.C. § 158 et seq. The Board determined that Respondent had twice violated Section 8(a)(2) of the Act by (1) recognizing as the employees' bargaining unit an in-house shop committee that had failed to garner a majority of the employees' votes, and (2) subsequently recognizing what effectively was a renamed alter ego of the aforementioned shop, which by then had been able to demonstrate a majority of support. The Board also found that Respondent had on three separate occasions violated Section 8(a)(1) of the Act by forcing employees to remove pins and hats bearing the UAW insignia. The Board further determined that Autodie International had violated Section 8(a)(1) by informing the President of UAW Local 2304 that the company would never recognize the UAW. Finally, the Board found that Respondent's physical transfer of three pro-UAW employees to work posts where they could more easily be monitored by management violated Sections 8(a)(3) and (1) of the Act. For the following reasons, we believe the NLRB's conclusions that Respondent Autodie International violated Sections 8(a)(1) and 8(a)(2) of the Act, 29 U.S.C. § 158(a)(1), (2),[2] to be supported by substantial evidence in the record as a whole.[3]
 
 
 2
 * * *
 
 
 3
 Two of the issues before this Court can be dispensed with in short order. As discussed immediately above, the NLRB adopted the ALJ's findings that (1) Autodie International had violated section 8(a)(1) of the National Labor Relations Act when it informed Local 2304 President Doug Lamb that the company had no intention of ever recognizing the UAW; and (2) the company's unjustified physical transfer of three pro-UAW employees constituted violations of sections 8(a)(3) and (1) of the Act. On application for enforcement of the Board's Decision and Order, Autodie International does not address the merits of either of these issues. With respect to these findings of unfair labor practices, the Board's Order is therefore entitled to summary affirmance. See NLRB v. Valley Plaza, Inc., 715 F.2d 237, 240-41 (6th Cir.1983); NLRB v. Tennessee Packers, Inc. Frosty Morn Div., 344 F.2d 948, 949 (6th Cir.1965).
 
 
 4
 Where an employer recognizes an organization as the representative of its employees without the confirmation of an NLRB-conducted representative election, it risks mistaking the extent of the employees' support for the organization and of committing the unfair labor practices associated with the recognition of a minority organization. See International Ladies' Garment Workers' Union v. NLRB (Bernhard-Altman Texas Corp.), 366 U.S. 731, 737, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961).
 
 
 5
 In International Ladies' Garment Workers' Union, the Supreme Court held that it was an unfair labor practice for both an employer and a union to enter into an agreement under which the employer recognized the union as the exclusive bargaining representative of certain of its employees, where only a minority of those employees had authorized the union to represent their interests. In August 1957, striking employees had signed authorized cards solicited by the union, which began negotiating with the employer during the strike. The employer and the union signed a memorandum of understanding whereby the company recognized the union as the exclusive bargaining representative of the employees based solely on the union's own unconfirmed assertions that it represented a majority of the employees, an assertion later found by the Board to be erroneous. The NLRB found that by extending such recognition, even though done in the good faith belief that the union had the consent of a majority of employees in the appropriate bargaining unit, the employer interfered with the organizational rights of its employees in violation of Section 8(a)(1) of the Act and that such recognition also constituted unlawful support to a labor organization in violation of Section 8(a)(2). In addition, the Board found that the union violated Section 8(b)(1)(A) by its acceptance of exclusive bargaining authority at a time when in fact it did not have the support of a majority of the employees, despite its bona fide belief that it did. The NLRB thus ordered the unfair labor practices discontinued and directed the holding of a representative election, in which the union in fact procured the support of a majority of the company's employees. The parties then entered into a collective bargaining agreement. The court of appeals granted enforcement, finding it difficult to "conceive of a clearer restraint on the employees' right of self-organization than for their employer to enter into a collective bargaining agreement with a minority of the employees." International Ladies' Garment Workers' Union v. NLRB (Bernhard-Altman Texas Corp.), 280 F.2d 616, 619 (D.C.Cir.1960), aff'd 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). The Supreme Court affirmed, stating:
 
 
 6
 At the outset, we reject as without relevance to our decision the fact that, as of the execution date of the formal agreement on October 10, petitioner represented a majority of the employees. As the Court of Appeals indicated, the recognition of the minority union on August 30, 1957 was "a fait accompli depriving the majority of the employees of their guaranteed right to choose their own representative." 280 F.2d at 621. It is, therefore, of no consequence that petitioner may have acquired by October 10 the necessary majority if, during the interim, it was acting unlawfully. Indeed, such acquisition of majority status itself might indicate that the recognition secured by the August 30 agreement afforded petitioner a deceptive cloak of authority with which to persuasively elicit additional employee support.... There could be no clearer abridgement of section 7 of the Act, assuring employees the right "to bargain collectively through representatives of their own choosing" or "to refrain from" such activity. It follows, without need of further demonstration, that the employer activity found present here violated section 8(a)(1) of the Act which prohibits employer interference with, and restraint of, employee exercise of section 7 rights.... The law has long been settled that a grant of exclusive recognition to a minority union constitutes unlawful support in violation of that section, because the union so favored is given a "marked advantage over any other in securing the adherence of employees." NLRB v. Pennsylvania Greyhound Lines, 303 U.S. 261, 267, 58 S.Ct. 571, 82 L.Ed. 831 (1938).
 
 
 7
 366 U.S. at 736-38, 81 S.Ct. 1603 (footnote omitted).
 
 
 8
 In the instant matter, the in-house committee proceedings of January 18, 1993, "elected" the Autodie International In-House Shop Committee with the support of only 139 of the company's 309 employees, a fact known by Autodie International at the time. Negotiations between this committee and Autodie International were suspended soon thereafter, however, when the NLRB's Regional Director issued an unfair labor practices complaint alleging violations of sections 8(a)(1) and (2) of the Act in connection with this election. The parties' subsequent settlement agreement afforded both the in-house committee and UAW Local 2304 the opportunity to garner the majority necessary to be recognized as the employees' exclusive bargaining representative. The new in-house committee, manned by the identical officers as the old committee but renamed the Autodie International Employees Labor Organization, secured such a majority with 183 out of a possible 309 votes and was immediately recognized by the company. Negotiations simply resumed where they had left off only weeks before. Under these circumstances, and in light of the Supreme Court's holding in International Ladies' Garment Workers' Union, we find ample evidence to uphold the NLRB's conclusion in the instant matter that there were unfair labor practices constituting violations of sections 8(a)(1) and (2) of the Act.
 
 
 9
 Respondent contends that the company's repeated recognition of the in-house shop committee in its various forms should be judged not by the pair of elections on January 18 and March 11, 1993, but rather by the petition signed on December 8, 1992, by 203 of Autodie's 348 employees while negotiations for the purchase of Autodie were still proceeding and before any offers of employment had been extended by Autodie International, the original company's successor. As the Board noted, however, "on December 11, there was no in-house labor organization for management to recognize. Management's grant of recognition accordingly had no effect." NLRB Decision and Order of July 11, 1996, at 4. First, at the time the December 8 petition was circulated, none of Autodie's employees knew whether they would be hired by Autodie International after the Wisne family's purchase of the company. Thus, even if the aspiring in-house committee could muster 203 of 348 votes, it was never clear that the votes constituting that majority would have any relevance after the transaction, which was consummated on December 23. Since these individuals were not employees of Autodie International at the time they signed the petition, their signatures did not effectively create an "employee" representation committee or plan. Second, the December 8 petition on its face did not state that the employees intended to constitute themselves as a "labor organization" and to designate that labor organization to serve as their exclusive representative. Rather, the petition was silent in this regard, simply indicating the signatories' preference to be represented by an in-house committee: "We, the undersigned hourly employees request that the contract negotiations be conducted with an in-house committee and not with the representatives of Local 2304 or the International UAW." NLRB Decision and Order of July 11, 1996, at 4 (quoting petition). As the Board made plain: "The question, necessarily, is one of the employees' intent. And on the face of the petition: (1) there is no indication that the employees intended, by the petition, to create a labor organization; and (2) the employees had not yet chosen which 'in-house committee' they wanted to represent them." Id.[4]
 
 
 10
 We thus conclude that the NLRB properly rejected Respondent's defense that its recognition first of the Shop Committee and then of its alter ego, the Autodie International Employees Labor Organization, was lawfully predicated on the fiction that 203 employees had intended to constitute themselves as a "labor organization," as defined in 29 U.S.C. § 152(5), notwithstanding the fact that (1) they failed to state this intent expressly; and (2) they failed to ask Autodie International to recognize them as such. Autodie International plainly violated section 8(a)(2) of the Act on both occasions. As the NLRB found, to conclude otherwise would improperly place in an employer's hands "the power to completely frustrate employee realization of the premise of the Act--that its prohibitions will go far to assure freedom of choice and majority rule in employee selection of representatives." International Ladies' Garment Workers' Union v. NLRB (Bernhard-Altman Texas Corp.), 366 U.S. 731, 738-39, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961).
 
 
 11
 * * *
 
 
 12
 The Supreme Court has held that the wearing of union insignia, including buttons and pins, falls within the definitions of "other concerted activities" in furtherance of the rights of self-organization granted by section 7 of the Act, and is therefore protected activity. See Republic Aviation Corp. v. NLRB, 324 U.S. 793, 795-804, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); see also Meijer, Inc. v. NLRB, 130 F.3d 1209, 1217 (6th Cir.1997); NLRB v. Mead Corp., 73 F.3d 74 (6th Cir.1996). The practice of wearing union insignia furthers "the right [of employees] to communicate effectively with one another regarding self-organization at the jobsite." Beth Israel Hosp. v. NLRB, 437 U.S. 483, 491, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978). This right is not absolute, however. In Republic Aviation Corp., the Supreme Court articulated the legal principle which must govern the NLRB's enforcement of this right:
 
 
 13
 [The Board must adjust] the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee.
 
 
 14
 324 U.S. at 797-98, 65 S.Ct. 982.
 
 
 15
 In light of this delicate balance, any restriction on the right of employees to communicate about their choice of representatives, including the right to wear union insignia at the worksite, will be found to be unlawful absent proof by the employer that "special circumstances" make the restriction necessary to maintain production and discipline. See Republic Aviation Corp., 324 U.S. 793, 803 & n. 10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Meijer, Inc. v. NLRB, 130 F.3d 1209 (6th Cir.1997); NLRB v. Mead Corp., 73 F.3d 74, 78-79 (6th Cir.1996). The employer's burden of justifying restrictions of Section 7 activity is particularly difficult to meet when the employer cannot show that its restrictions on protected communications comport with an announced policy of general applicability.
 
 
 16
 Determining whether an asserted business justification is bona fide, and if so, whether it outweighs the harm done to employee rights, are tasks reserved to the NLRB. See Meijer Inc. v. NLRB, 130 F.3d 1209 (6th Cir.1997). The Board's factual findings underlying its conclusions are "conclusive" if supported by substantial evidence on the record as a whole. See 29 U.S.C. § 160(e); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Findings subject to such review may be reversed only if the record is "so compelling that no reasonable factfinder could fail" to disagree. INS v. Elias--Zacarias, 502 U.S. 478, 483-84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).
 
 
 17
 In the instant matter, Respondent raises two primary claims with respect to the NLRB's finding that Autodie International's forced removal of its employees' pins and clothing bearing the UAW insignia violated section 8(a)(1) of the Act. First, without spelling out the gravamen of its argument, Respondent contends that a special circumstance exists here to justify the banning of pro-UAW pins and hats. Second, it claims that wearing UAW steward pins created confusion among the employees because the UAW no longer had exclusive representational rights and the position of "UAW steward" was thus a practical nonentity with respect to the company. We disagree. Autodie International had not implemented an official dress code from which the union members in question departed. According to testimony heard by the Board, the company allowed its employees to wear an assortment of informal clothing advertising various products and businesses, including logos of entities other than its own. More importantly, there was no "special circumstance" which allowed Autodie International to protect its employees from the putative "confusion" caused by the steward buttons. In light of the multiple elections held in an attempt to produce a majority-backed bargaining representative, there can be little doubt that there was competition between the in-house committee and the UAW. We find that Respondent Autodie International has failed to carry its burden of demonstrating either "special circumstances" requiring the restriction to maintain production and discipline or an announced policy of general applicability justifying its restrictions of protected Section 7 activity.
 
 
 18
 For the foregoing reasons, enforcement of the Board's Order is granted.
 
 
 
 [1]
 The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of American (UAW), AFL-CIO and its Local 2304 were granted leave to intervene in support of the Board's application for enforcement
 
 
 [2]
 The National Labor Relations Act, 29 U.S.C. § 158 et seq., provides, in pertinent part:
 (a) Unfair labor practices by employer
 It shall be an unlawful labor practice for an employer--
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it....
 29 U.S.C. § 157 provides:
 Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).
 
 
 [3]
 The NLRB's Order must be enforced if there is substantial evidence on the record as a whole to support the Board's findings and inferences. See Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)
 
 
 [4]
 The ALJ's Board-approved finding that Autodie International violated section 8(a)(2) of the Act is limited solely to the company's subsequent recognition of and bargaining with the shop committee on January 27 and the renamed Autodie International Employees Labor Organization. In early December, however, there was no violation of section 8(a)(2), as there was no labor organization to begin with