**THE TIMKEN COMPANY,**
**Petitioner/Cross–**
**Respondent,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent/Cross–**
**Petitioner.**

No. 00–1828, 00–1996.

United States Court of Appeals,
Sixth Circuit.

Feb. 4, 2002.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

Adopting the recommendations made by an administrative law judge, the National Labor Relations Board ("the Board") concluded, in pertinent part, that The Timken Company ("Timken") violated the National Labor Relations Act ("NLRA") by: (1) restricting employees' distribution of union literature during off-hours and off company property, (2) photographing and videotaping employees who distributed union literature at the main plant entrance turnstile, and (3) limiting the number of employees who could pass out handbills at the main employee entrance to the plant. *Timken Co.*, 331 NLRB No. 86, 2000 WL 981649 (NLRB July 13, 2000).

Timken petitions this court to review these portions of the NLRB's order. The NLRB has filed a cross-petition, seeking enforcement of its order. The parties have expressly waived oral argument, and we agree that it is not needed. Fed. R.App. P. 34(a).

The Board contends that its decision and order is, in all respects, supported by substantial evidence. Timken contends that the Board erred: (1) in refusing to consider or balance its property rights against the employees' rights under § 7 of the NLRA, (2) in concluding that the videotaping of employees violated the NLRA, and (3) in concluding that insubordinate conduct by employees was protected under the NLRA.

The Board's "findings of facts, as well as its application of law to fact, may not be disturbed where substantial evidence on the record taken as a whole supports the Board's findings and conclusions." *NLRB v. Vemco, Inc.*, 989 F.2d 1468, 1473 (6th Cir.1993) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Substantial evidence encompasses "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217, 59 S.Ct. 206, 83 L.Ed. 126 (1938). We consider the evidence contrary to the Board's conclusions, but we may not conduct *de novo* review of the record. *Union Carbide Corp. v. NLRB*, 714 F.2d 657, 660 (6th Cir.1983). This court is bound to defer to the Board's consistent interpretations of the NLRA. *NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115, 1119 (6th Cir.1997). Review of the Board's interpretation of Supreme Court and Sixth Circuit precedent is *de novo*. *Sandusky Mall Co. v. NLRB*, 242 F.3d 682, 692 (6th Cir.2001).

Timken casts its first contention of error as follows: whether the Board erred, in the light of *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), in failing to consider or balance its property rights against the Section 7 rights of the employees. Section 7 of the NLRA provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157.

In *Lechmere*, the Supreme Court stated, "[a]s a rule ... an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property," except in the narrow circumstance when an employer's "property rights may be required to yield to the extent needed to permit communication of information on the right to organize." *Lechmere*, 502 U.S. at 533–34, 112 S.Ct. 841 (citation and internal quotation marks omitted). Timken takes issue with the

Board's conclusion that *Lechmere* is not applicable because employees, rather than non-employees, are involved. Only employees are concerned in the instant case.

■ Timken's contention is without merit. In delineating the protections accorded to an employer's property rights, *Lechmere* drew a distinction between the union activities of employees and union organizers who are not employees. "By its plain terms, .... the NLRA confers rights only on *employees,* not on unions or their nonemployee organizers ...." *Id.* at 532, 112 S.Ct. 841 (emphasis in original). In *Nashville Plastic Products,* 313 NLRB 462, 463 (NLRB 1993), the NLRB perpetuated the employee/nonemployee distinction, recognizing that "the rule enunciated in *Lechmere* does not apply to employees." *See also ITT Indus., Inc. v. NLRB,* 251 F.3d 995, 1005 (D.C.Cir.2001) (citing *Nashville Plastic* ); *Sandusky Mall,* 242 F.3d at 688 (drawing a distinction between employees and nonemployee union representatives in light of *Lechmere* ). In light of this clear and substantive distinction, the Board correctly concluded that no balancing of interests was necessary. *See also NLRB v. Ohio Masonic Home,* 892 F.2d 449, 452 (6th Cir.1989) (a pre-*Lechmere* decision).

Citing to this court's decision in *NLRB v. Windemuller Elec., Inc.,* 34 F.3d 384 (6th Cir.1994) and *Jean Country,* 291 NLRB 11 (Sept. 27, 1988), Timken contends that balancing was required. The championed balancing test of *Jean Country* is no more. *Lechmere,* 502 U.S. at 535–38, 112 S.Ct. 841; *Sandusky Mall,* 242 F.3d at 688 (noting that the Supreme Court in *Lechmere* declined to follow the Board precedent in *Jean Country* ). Thus, we need not address this issue any further.

Our decision in *Windemuller* is distinguishable. The specific holding of *Windemuller* is that "[i]t was not an unfair labor practice for the company to ask that hard hats owned by it not be used as billboards for the union, as long as employee-owned jackets, T-shirts and the like could be used for that purpose." *Windemuller Elec., Inc.,* 34 F.3d at 394. This is not a case concerning union insignia on personal property: this case concerns Timken's attempt to restrict employees' statutory right to distribute union literature in non-work areas during hours when they were not on the job. "[A]ny restriction on the right of employees to communicate about their choice of representatives ... will be found to be unlawful absent proof by the employer that 'special circumstances' make the restriction necessary to maintain production and discipline." *NLRB v. Autodie Intern., Inc.,* 169 F.3d 378, 384 (6th Cir.1999) (citing *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 803, 65 S.Ct. 982, 89 L.Ed. 1372 (1945)); *Meijer, Inc. v. NLRB,* 130 F.3d 1209, 1214 (6th Cir.1997); *NLRB v. Mead Corp.,* 73 F.3d 74, 78–79 (6th Cir.1996). Restrictions on employee distribution of union literature in nonworking areas are unlawful under § 8(a)(1) of the NLRA. *Ohio Masonic Home,* 892 F.2d at 452–53 (citing *Tri-County Med. Ctr.,* 222 NLRB 1089 (1976)). To validly restrict this activity, Timken was required to show that union solicitation somehow disrupted its operations or some other special circumstances. *NLRB v. St. Francis Healthcare Ctr.,* 212 F.3d 945, 961 (6th Cir.2000). Timken made no such showing.

■ The Board did not err in concluding that Timken violated the employees' rights by indiscriminately videotaping employees who handed out union literature at the main plant turnstile. Section 7 of the NLRA gives employees the right to form or join labor unions. 29 U.S.C. § 157. Section 8(a)(1) of the NLRA gives effect to this right by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of [their Section 7] rights ..." 29

U.S.C. § 158(a)(1). The test for determining whether an employer has violated Section 8(a)(1) is "whether the employer's conduct tends to be coercive or tends to interfere with the employees' exercise of their rights." *United Parcel Service v. NLRB*, 41 F.3d 1068, 1071–72 (6th Cir. 1994) (citing *NLRB v. Okun Bros. Shoe Store, Inc.*, 825 F.2d 102, 105 (6th Cir. 1987)). "In making this determination, the Board considers the total context in which the challenged conduct occurs and is justified in viewing the issue from the standpoint of its impact upon the employees." *Id.* (citations omitted).

Timken stipulated that it videotaped employees who gathered at the main entrance turnstile following an April 1996 confrontation between Timken's human resources manager and a pro-union employee. The administrative law judge found the confrontation to be a trivial event. Apparently, the manager placed his hand upon the employee's shoulder and then removed it upon request and apologized. The record reveals that, at the time of the confrontation, the manager was enforcing an *ad hoc* company policy of allowing no more than two employees to pass out union literature while standing along the main turnstile. Timken maintained that the videotaping was performed to protect management from false claims of assault and battery; nevertheless, Timken stipulated that the videotaping was also performed when no member of the management team was present.

"[A]bsent proper justification, the photographing of employees engaged in protected concerted activities violates the [NLRA] because it has a tendency to intimidate." *F.W. Woolworth Co.*, 310 NLRB 1197, 310 NLRB No. 204 (1993) (citing *Waco, Inc.*, 273 NLRB 746, 747 (1984)). Timken cites to no legal justification for its indiscriminate videotaping of employees who handed out union litera-

ture: under these circumstances, the NLRB's finding of a violation was proper. *Clock Elec., Inc. v. NLRB*, 162 F.3d 907, 918 (6th Cir.1998); *see also Horsehead Res. Dev. Co. v. NLRB*, 154 F.3d 328, 340–41 (6th Cir.1998) (concerning the indiscriminate videotaping of employees).

■ Timken contends that the Board improperly concluded that it violated the NLRA when it punished employees for insubordination when they violated the two-person limit on gathering at the main turnstile and along a vehicle byway. Citing to the non-binding decision in *Earle Industries, Inc. v. NLRB*, 75 F.3d 400 (8th Cir.1996), Timken argues that it was within its rights to punish employees who were insubordinate and violated its reasonable restriction on assembly. The Board determined that Tinken's restrictions were unreasonable violations of the NLRA. In response to Timken's "insubordination" argument, the Board noted that *Earle Industries* was distinguishable because Timken employees did not engage in any misbehavior or refuse a work order in the course of asserting § 7 rights. The off-duty handbillers refused a dispersal order; however, the activity they were engaged in was not the performance of work tasks but rather union activities on their own time. *Timken Co.*, 331 NLRB No. 86.

Section 7 of the Act affords employees engaged in concerted activity certain protections. *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 837, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). "The fact that an activity is concerted, however, does not necessarily mean that an employee can engage in the activity with impunity." *Id.* In other words, protection pursuant to § 7 requires that the concerted activity not be unlawful or otherwise improper. *NLRB v. Leslie Metal Arts Co.*, 509 F.2d 811, 813 (6th Cir.1975); *Washington Adventist Hosp.*, 291 NLRB 95, 102 (1988). No unlawful activity is concerned in this case.

The record does not reveal anything close to the level of disruption visited upon the employer in *Earle Industries. See Earle Indus.,* 75 F.3d at 402 (employee sponsored an incursion inside Earle's plant, through the employees' door, by the Reverend Jesse Jackson and a crowd of unruly individuals, film crew in tow). As noted above, Timken's *ad hoc* restrictions on organizing violated the Act. The employees' law-abiding refusal to comply with this unlawful policy, under these circumstances, does not constitute unprotected insubordination. *Cooper Tire & Rubber Co.,* 299 NLRB 942, 953 (1990).

For the forgoing reasons, we deny Timken's petition for review and grant the Board's cross-petition for enforcement in all respects.